O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD J. G.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. 8:19-cv-1525-KES<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## **PROCEDURAL BACKGROUND**

Plaintiff Leonard J. G. ("Plaintiff") applied for Title II Social Security disability insurance benefits in 2016, alleging a disability onset date of July 15, 2015. Administrative Record ("AR") 164-67. On April 30, 2018, the Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff testified without representation.[1] AR 35-65. On August 1, 2018, the ALJ issued an unfavorable decision. AR 18-28. The ALJ found that Plaintiff last met the insured

---

[1] Plaintiff was pro se at his hearing (AR 35-36), but had counsel before the ALJ's denial of benefits (AR 18, 156).

status requirements of the Social Security Act on December 31, 2017. AR 20. Plaintiff suffered from medically determinable severe impairments consisting of lumbar degenerative disc disease, lumbar compression fracture, obesity, and osteomyelitis. AR 21. Despite these impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with additional limitations on postural activities and a requirement to avoid "even moderate exposure in the workplace to industrial hazards." AR 22. Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could still do his past relevant work as a procurement clerk, rated a "sedentary" job by the Dictionary of Occupational Titles ("DOT"). AR 27. The ALJ concluded that Plaintiff was not disabled. AR 28.

## II.

## ISSUES PRESENTED

Issue One: Whether the ALJ erred in evaluating Plaintiff's subjective symptom testimony.[2] (Dkt. 19, Joint Stipulation ["JS"] at 2.)

Issue Two: Whether the ALJ erred in evaluating the opinions of state agency consultant Dr. Berry "in support of a Listing." (Id.)

Issue Three: Whether remand is required to allow the ALJ to consider new evidence. (Id.)

---

[2] In the midst of Issue One, Plaintiff argues that the ALJ erred by failing to consider the observations of a field office employee who interacted with Plaintiff. (JS at 12-13, citing AR 194 [reporting Plaintiff "used a cane to walk and appeared to be in pain when moving"].) When Defendant failed to recognize this as a separate issue, Plaintiff argued that Defendant conceded error by failing to address it. (JS at 21.) Defendant did not concede anything by failing to spot an issue never properly identified by Plaintiff. (Dkt. 11 at 3.) In any event, nothing indicates that the ALJ "ignored" this evidence, since the ALJ found that Plaintiff suffers from severe impairments and assessed a restrictive RFC. Plaintiff fails to cite any authority for the premise that ALJs must discuss field office employee observations in their written decisions.

# III.
# DISCUSSION

## A. ISSUE ONE: Plaintiff's Subjective Symptom Testimony.

### 1. Summary of Plaintiff's Testimony.

Plaintiff testified that although he has been separated from his wife for years, he tried to help as much as he could with his two children, age 6 and 13 at the time of the hearing. AR 38. Every day for the last 4 or 5 years, he drove about a half-hour to their house, would "clean a little," helped the children get ready for school, drove the children to school, and picked them up. AR 38, 40-41, 51-52, 55. He also did "little chores" for his wife and ran errands for her while she went to work. AR 53. He typically stayed at their house until about 9:00 p.m. everyday. AR 52.

When not helping with the kids, he spent time sitting, sleeping, or walking in the park for exercise. AR 52, 55. He could walk one lap around the park (which took less than 10 minutes) before pain forced him to stop and rest. AR 53-54. He could resume walking after a minute or so, but then he might have to stop and rest again. AR 53. He estimated that he could not lift more than 10 pounds. AR 54. He could sit for 10-15 minutes before he needed to get up and move. AR 55. He could attend school-related functions for his kids, like Back to School Night. AR 56.

He last worked fulltime in 2012 doing purchasing for a recycling company. AR 42. He was laid off when the "price of metal dropped" and the economy took a downturn. Id. He testified that he has been unable to work since then due to "constant" back pain. Id. He testified that surgery was "highly recommend[ed,]" but he was "scared of … surgery" because his doctors could not "guarantee" that it would make his condition better rather than worse. AR 42-43. He was afraid that if surgery went badly, "what about if I stay bad and I can't help out with my kids more, walk through the park with my kids to take them to play." AR 43. He was also afraid of trying to go back to work, because he feared that by doing so, he

might "hurt myself more or make myself more disabled than what I am." AR 61.

Plaintiff also completed an Exertion Questionnaire on April 19, 2016. AR 207-09. Plaintiff reported that he did not "walk much because [his] back will start to hurt." AR 207. He also "ha[d a] hard time driving due to [his] back and sitting down" but he would "pick up daughter from school[.]" Id. He clarified that he could only drive "about 30 minutes or less" at a time due to back pain. AR 208. He slept 8-10 hours/day and rested laying down about 1 hour/day. AR 209. He used a cane to walk when his back was hurting. Id. He could not climb stairs and could only lift 3 pounds or less. AR 208. Nevertheless, he could do his own grocery shopping, sweep his small room which only took 10 minutes, and wash dishes. Id.

**2.     The ALJ's Evaluation.**

The ALJ recited the two-step process for evaluating subjective symptom testimony. AR 22. The ALJ then summarized Plaintiff's hearing testimony and Exertion Questionnaire. AR 22-23. The ALJ determined that Plaintiff satisfied step one, because his impairments could cause the alleged symptoms. AR 24. At step two, however, the ALJ found that Plaintiff's statements about the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 24. As reasons supporting this finding, the ALJ cited inconsistency with (1) Plaintiff's reported activities; (2) Plaintiff's course of treatment; and (3) findings upon physical examination. AR 23-24.

**3.     Analysis of Claimed Error.**

Plaintiff argues that none of the ALJ's three reasons constitute a clear and convincing reason to discount Plaintiff's subjective symptom testimony. (JS at 3-13, 18-23.)

a.     Reason One: Inconsistency with Activities.

Regarding Plaintiff's reported activities, the ALJ wrote as follows:

4

> Although the claimant's activities of daily living were somewhat limited, some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition.  [Plaintiff] indicated he could perform personal grooming activities, prepare simple meals, drive a vehicle and perform household chores. [citations omitted]  Additionally, [Plaintiff] mentioned he drove his children to and from school and went to [his] estranged wife's home on almost a daily basis to assist with household chores and caring for their children.  The claimant's ability to participate in such activities undermines the claimant's allegations of disabling functional limitations.

AR 23.

First, Plaintiff argues that there is no inconsistency between Plaintiff's claimed disability and his childcare activities, because the care he provides is "minimal and sporadic." (JS at 5-6.)  The record does not support this argument. Plaintiff testified that he provided childcare nearly every day. AR 41, 52.  He helped get the kids ready for school. AR 51.  Then he took the kids to school and picked them up, because his wife was working. AR 38, 51.  He spent "most of the day around" his kids, not leaving their house until 9:00 p.m. AR 52.

Second, Plaintiff argues that he can only do exertional activities like walking, cleaning, and driving with rest breaks, which the ALJ failed to consider. (JS at 6.)  When summarizing his testimony, however, the ALJ noted Plaintiff's testimony that he needed to take a rest break after walking less than 10 minutes and took a 1-hour rest break during the day. AR 22-23. Ultimately, Plaintiff testified that he was able to spend most of each day doing light household chores, driving, caring for his children, and walking in the park, activities that the ALJ correctly

found inconsistent with an alleged inability to do even sedentary work.

Third, Plaintiff argues that there is no inconsistency because his activities are not commensurate with fulltime work. (JS at 6.) Since his reported activities consume most of his day (but for a 1-hour rest break comparable to a regular lunch break), Plaintiff fails to support this argument.

Lastly, Plaintiff argues that his ability to do household chores and prepare simple meals does not demonstrate transferrable job skills. (Id.) The ALJ correctly found that Plaintiff's activities involve some of the same "physical and mental abilities and social interactions" required to maintain employment. AR 23. Plaintiff's abilities to drive, make purchases at stores, help his children maintain their school schedule, and run business errands for his wife ("if she has something to get paid, I'll go and pay that" [AR 53]) all demonstrate Plaintiff's ability to do basic work activities relevant to his prior work as a procurement agent.

   b. Reason Two: Inconsistency with Treatment.

The ALJ wrote, "The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual." AR 23.

First, Plaintiff argues that the ALJ failed to explain how Plaintiff's course of treatment was more conservative than one would expect given his testimony. (JS at 7-8.) The ALJ, however, explained that while "claimant testified his physician had recommended spine surgery … he was fearful to undergo surgery." AR 23. Plaintiff's doctors had recommended surgery to him as early as 2015. AR 46-47, 399-402. By the hearing in 2018, he was still too fearful. AR 42-43. The ALJ reasonably found that if Plaintiff had spent three years as impaired as he claimed to be (e.g., unable to walk for 10 minutes, lift 2 pounds, or do sedentary work), then one would expect him to have pursued recommended surgical treatment options or at least learned about them. AR 48 (Plaintiff was unsure what kind of surgery his doctors recommended). Instead, Plaintiff was fearful that surgery might make his condition worse, suggesting that he retained a significant degree of functional

capacity that he feared losing.

Next, Plaintiff argues that the ALJ never considered Plaintiff's reasons for refusing surgery. (JS at 9.) To the contrary, the ALJ specifically noted that Plaintiff was too "fearful" to undergo surgery. AR 23.

Plaintiff also argues that he has received injections, which are not conservative treatment. (JS at 8.) Plaintiff misses the point of the ALJ's argument, which is that the treatment he received, including a few injections, was more conservative than one would expect given his allegations.

Finally, Plaintiff argues that the ALJ is not qualified to assess what kind of treatment one would expect a person as impaired as Plaintiff alleges to receive. (JS at 8-9.) The regulations authorize ALJs to what treatment other than medication claimants have received for their pain. See 20 C.F.R. § 404.1529(c)(3)(iv), (v) (consideration of treatment and medication regimen relevant to evaluating symptom testimony); Yanez v. Astrue, 252 F. App'x 792, 794 (9th Cir. 2007) (unpublished) (discounting testimony where claimant "put off scheduling left-knee surgery despite his claims of debilitating pain").

       c.     Reason Three: Inconsistency with Physical Examinations.

Plaintiff argues that the ALJ merely summarized Plaintiff's treatment records and failed to identify specific inconsistencies. (JS at 12.) To the contrary, the ALJ pointed out numerous instances when Plaintiff complained of back pain but displayed a full range of motion, had a negative straight-leg raising test, or had other normal or mild clinical findings. AR 23-26. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

**B.     ISSUE TWO: Dr. Berry and The Listings.**

    **1.     The Listings.**

At Step Three of the disability analysis, an ALJ considers whether a claimant's impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). The Listings are divided into categories of impairments that relate to various "body systems" (e.g., musculoskeletal system, respiratory system, etc.). 20 C.F.R. § 404.1525(a). The impairments described within each category are those that Social Security considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. Id. If a claimant's "impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

Here, the ALJ considered whether Plaintiff met Listing 1.04 for spinal disorders. AR 22. Listing 1.04 falls under Section 1.00 addressing impairments affecting the musculoskeletal system. All of the listings for the musculoskeletal system are preceded by the Section 1.00 "introduction" which "contains information relevant to the use of the listings in that body system; for example, examples of common impairments in the body system and definitions used in the listings for that body system." 20 C.F.R. § 404.1525(c)(2). The introduction "may also include specific criteria for establishing a diagnosis, confirming the existence of an impairment, or establishing that [the claimant's] impairment(s) satisfies the criteria of a particular listing in the body system." Id.

To meet Listing 1.04, a claimant must establish a spine disorder (such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture") resulting in compromise of a nerve root or the spinal cord, plus satisfy either subpart A, B, or

C. 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 1.04. Subpart C[3] requires "Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." Section 1.00, in turn, defines the inability to ambulate effectively as being unable to ambulate "without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities[,]" e.g., two canes, two crutches or a walker. 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00(B)(2)(b).

### 2. Relevant Administrative Proceedings.

In June 2016, the state agency consultant for initial review, Dr. Strong, opined that Plaintiff suffered from severe impairments including spinal disorders and osteomyelitis, but he could still stand or walk for 6 hours/day. AR 71-75.

On reconsideration in August 2016, state agency consultant Dr. Berry opined that Plaintiff could only walk or stand for 4 hours/day. AR 84, 86. Dr. Berry also wrote "cane needed for long distance ambulation due to osteomyelitis of Lumbar region." AR 84. Dr. Berry explained this change by citing a March 2016 MRI that showed some worsening of Plaintiff's condition. AR 85. Under "environmental limitations," Dr. Berry wrote, "Antalgic gait – avoid uneven terrain, working at heights." Id.

The ALJ gave "some weight" to the state agency consultants' opinions. AR 26. Regarding Dr. Berry, the ALJ found that the opinion Plaintiff "required the use of a cane for long distances is inconsistent with the claimant's record as a whole.

---

[3] Plaintiff does not identify which subpart of Listing 1.04 he contends he satisfies. The Court assumes he intended to reference subpart C, because he alleges that Dr. Berry's opinion establishes an inability to ambulate effectively. (JS at 23.) If Plaintiff meant to invoke some other subsection, his argument is waived for failure to raise the issue with sufficient specificity. Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999).

1  The claimant's treatment records only document intermittent use of a cane and the
2  claimant did not indicate [that] he used a cane at the hearing." Id.

3      The ALJ determined that Plaintiff's impairments did not meet or medically
4  equal Listing 1.04.  AR 22.  The ALJ reasoned that the record contained no
5  medical evidence finding that Plaintiff suffered Listing-level impairments.  Id.

### 3. Analysis of Claimed Error.

7      Plaintiff argues that Dr. Berry's opinion that Plaintiff should avoid uneven
8  terrain was equivalent to a finding that he cannot walk on uneven terrain which, in
9  turn, means that Plaintiff cannot ambulate effectively and is presumptively
10 disabled under the Listings.  (JS at 23-24.)  Plaintiff argues that the ALJ erred by
11 not giving reasons for discrediting this portion of Dr. Berry's opinion.  (Id.)

12     First, assuming Plaintiff contends that he satisfies Listing 1.04(C), Plaintiff
13 fails to discuss the other requirements of that listing, such as nerve root or spinal
14 cord compression.  He thereby fails to show legal error.

15     Second, the inability to ambulate effectively requires "the use of a hand-held
16 assistive device(s) that limits the functioning of both upper extremities."  20 C.F.R.
17 Part 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1).  There is no indication in the record
18 that to walk, Plaintiff requires the use of a hand-held assistive device that limits the
19 functioning of both his arms.  Plaintiff seems to argue that the inability to walk on
20 uneven terrain is *per se* "ineffective ambulation," because the regulations state that
21 examples of ineffective ambulation include "the inability to walk a block at a
22 reasonable pace on rough or uneven surfaces."  (JS at 23 (citing 20 C.F.R. Pt. 404,
23 Subpt. P, App. 1 § 1.00(B)(2)(b)(2)).)  The Ninth Circuit has rejected this
24 argument.  Moreno v. Astrue, 444 F. App'x 163, 164 (9th Cir. 2011) (holding that
25 an RFC limitation requiring walking only on even terrain did not establish inability
26 to ambulate effectively under the Listings).

27     Third, the ALJ discounted Dr. Berry's opinions about Plaintiff's need to use
28 a cane to walk long distances as inconsistent with the record.  AR 26.  This

10

adequately explains why the ALJ failed to include a prohibition against walking on uneven terrain in the RFC. And even if the ALJ's failure to include such a prohibition was error (which it was not), it would be harmless error, since there is no evidence that Plaintiff's past relevant work as a procurement agent required walking on uneven terrain.

## C. ISSUE THREE: New Evidence.

### 1. Legal Standards Governing Remand to Consider New Evidence.

Generally, a plaintiff "seeking remand [based on new evidence] must show 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" Allen v. Sec'y of Health & Human Servs., 726 F.2d 1470, 1473 (9th Cir. 1984) (quoting 42 U.S.C. § 405(g)); see also Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001) ("To justify a remand, [the plaintiff] must show that the [new evidence] is material to determining her disability, and that she had good cause for having failed to produce that evidence earlier.").

For the new evidence to be material under 42 U.S.C. § 405(g), it must "bear [] directly and substantially on the matter in dispute." Booz v. Sec'y of Health & Human Servs., 734 F.2d 1378, 1380 (9th Cir. 1984) (alteration in original) (citation omitted). Additionally, the plaintiff must also show "that there is a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." Mayes, 276 F.3d at 462 (quoting Booz, 734 F.2d at 1380-81). Furthermore, the plaintiff must demonstrate "that the new evidence is material to and probative of his condition as it existed at the relevant time — at or before the disability hearing." Sanchez v. Sec'y of Health & Human Servs., 812 F.2d 509, 511 (9th Cir. 1987) (citing 42 U.S.C. § 416(i)(2)(G)).

In order for the plaintiff to demonstrate good cause, the plaintiff "must demonstrate that the new evidence was unavailable earlier." Mayes, 276 F.3d at 463. "If new information surfaces after the Secretary's final decision and the

claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied." Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985). In contrast the plaintiff "does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied." Mayes, 276 F.3d at 463; see also Allen, 726 F.2d at 1473 ("The 'good cause' requirement would be meaningless" if a claimant were allowed to introduce new evidence simply by obtaining a new opinion after a hearing.).

### 2. Plaintiff's Treating History with Dr. Garcia.

Dr. Don Garcia at Clínica Médica Central started treating Plaintiff in 2015. AR 43-45. The earliest record from February 2015 shows that Plaintiff complained of "chronic neck, back and left shoulder pain after injury 2 years ago[;]" at the time, he was on "No med." AR 1188. Plaintiff was prescribed Tramadol and encouraged to exercise. AR 1189.

In August 2015, Plaintiff reported that he was not seeing any physician on a regular basis. AR 290. He was hospitalized with a prostate abscess, MRSA, and E. coli infections. Id. When he relapsed after discharge, he was readmitted and diagnosed with osteomyelitis. AR 290, 399. The hospital discharged him to the St. Edna Sub-Acute & Rehabilitation Center where he stayed until November 12, 2015. AR 399. Upon discharge, St. Edna noted that his "pain was eventually controlled" and he had an appointment to see Dr. Garcia as his primary care doctor. AR 401.

In December 2015, Dr. Garcia referred Plaintiff to UCI for MRIs and additional spinal testing. AR 479. Testing revealed various spinal issues, but Plaintiff had "no difficulty with ambulation." Id. UCI recommended "surgical debridement given failure of 12-week course of IV therapy" at St. Edna. Id. Plaintiff was discharged with medication and an appointment with a Neurosurgeon. AR 480.

By January 2016, Plaintiff endorsed stable, intermittent back pain rated at

7/10. Id. By May 2016, his "infection was gone" and his back pain was due to degenerative changes. AR 1170. In 2016 and 2017, Dr. Garcia's records show that Plaintiff routinely reported low levels of back pain to Dr. Garcia or his office staff. See, e.g., AR 1043 (pain rated 1 on 11/2/17); AR 1046 (pain rated 2 on 10/12/17); AR 1055 (pain rated 0 on 7/19/17); AR 1076 (pain rated 0 on 11/29/16); AR 1167 (pain rated at 4 on 8/9/16 for "bilateral lower leg pain"); AR 1091 (pain rated at 0 on 1/13/16). Plaintiff was encouraged to "increase exercise." AR 1044, 1057, 1078.

### 3. Relevant Administrative Proceedings.

The ALJ gave "little weight" to Dr. Garcia's opinion. AR 27 (citing AR 995 (a one-page form signed on 8/31/16 stating that the onset date of Plaintiff's condition was 2015, it is "permanent," and as a result, his physical limitations are "no work at this time")). The ALJ rejected this opinion as conclusory, because it lacked any assessment of Plaintiff's functional limitations and lacked supporting clinical findings.[4] Id. The ALJ also found it inconsistent with Dr. Garcia's office's treating records, citing Exhibit 16F starting at AR 1041. AR 27.

After the ALJ's adverse decision, Plaintiff submitted a new one-page opinion from Dr. Garcia to the Appeals Council. AR 14. Per this new, check-the-box form, Plaintiff suffers from "chronic neck and back pain with diabetic neuropathy." Id. Rather than simply stating that Plaintiff could not work, Dr. Garcia provided extreme opinions that would preclude work. For example, he opined that Plaintiff could only sit for 2 hours/day and walk or stand for 1 hour/day, essentially opining that Plaintiff must spend all but 3 hours/day lying down. Id. He also opined that Plaintiff would miss work more than three times a

---

[4] Plaintiff argues that the ALJ erred by failing to contact Dr. Garcia before discounting his opinion as unexplained. (JS at 37.) Plaintiff did not identify this as an issue on appeal, so the Court interprets this argument as attempting to explain why the ALJ might credit Dr. Garcia's second opinion on remand.

13

1  month.  Id.  His opinion is dated 9/5/18, but he wrote that the limitations expressed
2  "have been applicable since 2015" based on "blood test, MRI, neurology consult"
3  without specifying when the referenced tests occurred or their results.  Id.
4       The Appeals Council declined to make this form part of the record, because
5  it did not relate to the relevant time period, i.e., through December 31, 2017,
6  Plaintiff's last date insured.  AR 2.

### 4. The Opinion is New and Not Material.

8       Plaintiff argues that if the Appeals Council declines to make a document part
9  of the record, then the Court should review the decision of the Appeals Council for
10 error and limit its review to the rationale stated, rather than applying 42 U.S.C.
11 § 405(g).  (JS at 37-38, 40.)  This argument is inconsistent with the above-cited
12 authority.  Per § 405(g), this Court has jurisdiction to review the ALJ's decision as
13 the final decision of the Commissioner.
14      Plaintiff also argues that Dr. Garcia's September 2018 opinion is not "new"
15 evidence because it was considered by the Appeals Council.  (JS at 36.)  According
16 to Plaintiff, this "mandates" that the Court consider whether the ALJ's decision is
17 still supported by substantial evidence in light of Dr. Garcia's September 2018
18 opinion.  (Id.)  Plaintiff misunderstands the specialized meaning of the verb
19 "consider" in this context.  While the Appeals Council "considered" Dr. Garcia's
20 new opinion in deciding whether to make it part of the record, the Appeals Council
21 never "considered" Dr. Garcia's new opinion as medical evidence, because it
22 declined to make the opinion part of the record.  AR 2.  Plaintiff's situation is
23 factually distinguishable from the cases he cites.  (JS at 36.)
24      Plaintiff also argues that Dr. Garcia's new opinion is material because it was
25 written only a few weeks after the ALJ's decision.  (JS at 35.)  Plaintiff ignores the
26 fact that the relevant period ended on Plaintiff's last date insured, which was
27 December 31, 2017.  AR 20.
28      Plaintiff next argues that Dr. Garcia's new opinion is material, because he

wrote that the physical limitations identified "have been applicable since 2015." (JS at 35-36 (citing AR 14).) This is not enough to demonstrate that Dr. Garcia's new opinion was truly retrospective. As summarized above, Plaintiff experienced an acute episode of infection in 2015 and was at a skilled nursing facility for two months. After that, his condition improved. In the context of Dr. Garcia's own treating records, Dr. Garcia's new opinion cannot be understood to be retrospective as opposed to merely repeating Plaintiff's alleged onset date.

Additionally, Dr. Garcia's new opinion describes Plaintiff as suffering from diabetic neuropathy. AR 14. In November 2015, Dr. Garcia's office listed as a diagnosis, "Diabetes mellitus without mention of complication, type II or unspecified type, uncontrolled." AR 1183. By June 2017, Dr. Garcia's office still listed the same diagnosis, but noted that Plaintiff's sugar was "better controlled." AR 1139-40. At an October 2017 appointment to follow up on diabetes, Dr. Garcia's office's notes say nothing about neuropathy. AR 1128-31. Plaintiff began using insulin to treat his diabetes in 2018. AR 44. In April 2018, Plaintiff was increasing his insulin dose (AR 1120), but Dr. Garcia's office assessed his neurovascular systems as "intact." AR 1121.

Even if Dr. Garcia's new opinion related to the relevant time period, it would still be immaterial, because there is no reasonable possibility that it would have changed the outcome of the administrative hearing. Rather, the ALJ would have discounted it as inconsistent with Dr. Garcia's office's treating notes, just like Dr. Garcia's 2016 opinion.

//
//
//
//
//
//

# IV.
# CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner.

DATED: May 27, 2020

*Karen E. Scott*

KAREN E. SCOTT
United States Magistrate Judge